UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

RYAN L. DELAPINIA,

                         Petitioner,

    v.

CALVIN JOHNSON,[1] *et al.*,

                         Respondents.

Case No. 2:17-cv-02376-MMD-DJA

ORDER

## I.  SUMMARY

Petitioner Ryan L. Delapinia pleaded guilty to sexual assault, first-degree kidnapping, and robbery (each with use of a deadly weapon), and burglary, and is sentenced to two consecutive terms of life imprisonment with eligibility for parole after 33 years. (ECF No. 17-11.) Delapinia seeks a writ of habeas corpus under 28 U.S.C. § 2254 on the grounds, *inter alia*, that he received ineffective assistance of trial counsel at sentencing and resentencing. (ECF No. 25 ("Petition").) The Court grants the writ on the narrow grounds, alleged within 2(b) and 4(b) of the Petition, that trial counsel was ineffective by failing to investigate and present mitigation evidence of Delapinia's assistance to authorities at sentencing and resentencing. The Court will dismiss the remaining grounds of the Petition without prejudice.

///

///

///

---

[1]According to the state corrections department's inmate locator page, Delapinia is incarcerated at High Desert State Prison. The department's website reflects that Calvin Johnson is the warden for the facility. At the end of this order, the Court directs the Clerk of Court to substitute Calvin Johnson for respondent Brian E. Williams, Sr., under, *inter alia*, Federal Rule of Civil Procedure 25(d).

## II.    BACKGROUND[2]

### A.    Theft from Kohl's Department Store

On December 30, 2012, Gabriel Jimenez was employed as a loss prevention supervisor at Kohl's department store in Las Vegas, Nevada. (ECF No. 27-3 at 31-32.) Using electronic surveillance, Jimenez saw Delapinia enter the store with another man and select 20 or 25 items of merchandise without regard for price and size. (*Id.* at 32-34.) Sensing this was a red flag, Jimenez left the surveillance room and waited outside the store's exit until Delapinia exited "loaded with merchandise" that he had not purchased. (*Id.* at 34-37.) Jimenez saw Delapinia enter a pickup truck and called 911 to report the license plate number. (*Id.* at 37.) Jimenez followed the truck in his personal vehicle, and at one point was parked at a red light when his rear window shattered. (*Id.* at 38-39.) Jimenez said he saw Delapinia holding a revolver and a long object. (*Id.* at 39-41.) Feeling threatened and intimidated by the gun, Jimenez "hit the gas and got out of there pretty quick." (*Id.* at 41.) Damages included $832.34 for the stolen merchandise and $400 for Jimenez's window replacement. (*Id.* at 43-44.) Delapinia later admitted to police that he stole the merchandise, but said his friend shattered the window. (*Id.* at 167-68.)

### B.    Kidnapping, Sexual Assault, and Robbery

On January 11, 2013, Joanna Rice went out for a run at 5:00 a.m., wearing a sweatsuit and gloves. (*Id.* at 106-09.) She saw a truck parked at the entrance to her apartment complex, thought something was wrong, and pulled out her cell phone. (*Id.* at 108.) When she started to return to her apartment, the truck blocked her path and Delapinia, wearing a black bandana over part of his face, jumped out of the truck, pointed a gun at her, and ordered her to hand over everything in her pockets. (*Id.* at 109-10, 113-14.) Rice gave him her cell phone, headphones, keys, and pocket-knife. (*Id.* at 110.) Delapinia asked for money, but she had none. (*Id.*) He asked for the location of her

---

[2]The Court makes no credibility findings or other factual findings regarding the truth or falsity of the evidence from the state court. The Court's summary is merely a backdrop to its consideration of the issues presented in the case. Any absence of mention of a specific piece of evidence does not signify this Court overlooked it in considering Delapinia's claims.

1    apartment, and she pointed in a general direction. (*Id.*) He then walked her into his truck

2    at gunpoint and drove to her apartment while aiming the gun at her. (*Id.* at 110-12.)

3    According to Rice, Delapinia was behind her holding a gun to her back as they walked to

4    her apartment. (*Id.* at 115.) When they reached her apartment, he handed her the keys,

5    and she opened the door. (*Id.*) He then walked Rice into the apartment, ordered her to

6    give him money, and she gave him $460. (*Id.* at 115-17.)

7         Delapinia told Rice to get on her knees and she did, because she was afraid he

8    might shoot her. (*Id.* at 117.) She said that he told her he was doing this for his family and

9    she kept talking with him to keep him calm. (*Id.* at 118-19.) She said he asked for a hug,

10   and she gave him one because he was pointing a gun at her. (*Id.* at 119.) He told her she

11   was going to "suck his dick" and while holding the gun, he told her she was beautiful and

12   sexy, grabbed her vagina area and buttocks outside her pants, grabbed her breast,

13   inserted his penis in her mouth, and forced her to perform fellatio until he ejaculated in

14   her mouth. (*Id.* at 118-21.) Rice wiped her mouth on one of her gloves. (*Id.* at 121-22.)

15   Delapinia left some of Rice's money, her keys, and her cell phone, and told her he would

16   return to shoot her if her apartment was lit before he drove away. (*Id.* at 123-24.)

17        As soon as Delapinia left, Rice locked the front door, locked herself in the

18   bathroom, and called police (*Id.* at 124.) She said her sexual contact with Delapinia was

19   not consensual and later identified his truck. (*Id.* at 125-26.) A Sexual Assault Nurse

20   Examiner found no physical trauma or injuries to Rice. (*Id.* at 137.) Forensic scientist

21   Kellie Gauthier discovered Rice's glove bore semen and sperm, the sperm on the glove

22   was consistent with Delapinia's DNA, and his DNA was consistent with a partial DNA

23   profile from a sperm fraction found on Rice's fingernail. (*Id.* at 146-47, 151-54, 156-57.)

24        On January 12, 2013, Delapinia admitted to police that he committed the crimes

25   against Rice and Kohl's. (*Id.* at 168-72.) In his interview, he stated that he had a falling

26   out with gang members, the gang green-lighted him, shots were fired in front of his house,

27   and gang members threatened to go after his family and shoot him in front of his mother.

28   (ECF No. 17-3 at 5, 10-12, 14, 29-32, 41-44.) The transcript of Delapinia's police interview

3

reveals that the interviewing officer told Delapinia, "I will notify a gang detective and I'm gonna ask him to meet with you and talk to you about it." (*Id.* at 52.) According to records of the Las Vegas Metropolitan Police Department, later that day, Delapinia voluntarily provided statements to gang detectives, which led to arrests for unsolved and gang-related armed robberies unrelated to Delapinia's offenses. (ECF Nos. 22-21 at 2, 6-7; 22-22 at 4.) Delapinia wrote an apology letter to Rice and her mother claiming he committed the crimes due to the gang threats toward his family and he intended to "bring down" the gang. (ECF Nos. 17-2 at 93-94; 27-3 at 173-74.)

### C.    Guilty Plea and Initial Sentence

Delapinia pleaded guilty to sexual assault with use of a deadly weapon; first-degree kidnapping with use of a deadly weapon; burglary; and robbery with use of a deadly weapon. (ECF Nos. 17-4 at 3, 28-24.) Delapinia agreed the State could argue for any lawful sentence, including consecutive sentences. (ECF No. 28-24 at 2.) Under the agreement, the sentences allowable are: (1) life with the possibility of parole at 10 years for sexual assault plus 1 to 20 years for the use of a deadly weapon; (2) life with the possibility of parole in 5 to 15 years for first-degree kidnapping plus a consecutive term of 1 to 20 years for the use of a deadly weapon; (3) 1 to 10 years for burglary, provided the minimum term of imprisonment does not exceed 40% of the maximum term of imprisonment; and (4) 2 to 15 years for robbery plus a consecutive term of 1 to 15 years for the use of a deadly weapon, provided the minimum term of imprisonment does not exceed 40% of the maximum term of imprisonment. (*Id.* at 3-4.)

The Presentence Investigation Report ("PSR") revealed that Delapinia said Child Protective Services had been involved with his family for child abuse. (ECF No. 31-1 at 4.) He reported domestic violence between his mother and stepfather and that his stepfather used drugs and physically abused him; however, he denied neglect or sexual abuse. (*Id.*) He reported that he was enrolled in special education classes in elementary and middle school and completed the ninth grade. (*Id.*)

4

The PSR revealed that Delapinia admitted he started using marijuana and methamphetamine daily, and alcohol twice a week, when he was 16 years old. (*Id.* at 5.) He also reported occasional use of cocaine until three to four years before his arrest. (*Id.*) He acknowledged his addictions, said he spent $200 to $300 per week on drugs, and claimed all of his crimes were committed to support his addiction. (*Id.*)

According to the PSR, Delapinia's criminal record consisted of one prior felony conviction for possession of a stolen vehicle. (*Id.* at 6.) He unsuccessfully participated in the Regimental Discipline Program (Boot Camp) for that offense and was placed on supervised probation. (*Id.* at 7.) He reportedly violated probation by consuming alcohol, but no charges were filed, and he fulfilled the conditions of supervised probation with an "honorable discharge." (*Id.*) Delapinia also had three misdemeanor convictions for obstructing a police officer, non-medical possession of marijuana, and possession of burglary tools. (*Id.* at 6.) At the time of the offenses at issue in this matter, there were outstanding warrants for misdemeanor possession of narcotic paraphernalia, to which he pleaded not guilty on December 17, 2012, and a traffic infraction. (*Id.* at 6-7.) He was also "arrested, detained or cited" for a failure to appear and robbery with a deadly weapon between 2005 and 2013. (*Id.* at 7.)

The PSR stated that Delapinia had "My Evil Ways" tattooed on the right side of his head and scars on his ribs and shoulder. (*Id.* at 3.) Delapinia denied gang membership, but said he socialized with a gang member, and police confirmed him as a gang-affiliate. (*Id.* at 5.) The PSR reported that Delapinia told detectives he committed the crimes because the gang threatened his life and said they would shoot him in front of his family if he did not give them money. (*Id.* at 8.)

The defense presented character reference letters from six of Delapinia's female family members and friends, who stated Delapinia was a good, caring, and helpful person, who committed the crimes because he "fell off track" due to his abuse of methamphetamine and association with "the wrong crowd." (ECF No. 28-25.)

At sentencing, defense counsel argued, *inter alia*: (1) Delapinia's prior felony conviction was for attempted possession of a stolen vehicle when he was 18 years old; (2) his probation violations consisted of drinking and possession of a burglary tool, but probation was never revoked, and he was honorably discharged from probation; (3) he had never been imprisoned; (4) he was addicted to, and using, methamphetamine when he gave his statement to police; (5) he acknowledged responsibility for the crimes when he spoke to police; (6) he wrote an apology letter to the victim; and (7) he chose to plead guilty. (ECF No. 17-4 at 9-12.)

Delapinia admitted his responsibility for the crimes to the state district court. (*Id.* at 13.) He apologized to Rice, her family, and his own family, and said his apology was sincere and from his heart. (*Id.*) He said he chose to use drugs without realizing their impact and that he was a loving, kind, and respectful person, and the crimes were out of character. (*Id.*) He asked the court not to take his life or family away from him. (*Id.*)

Joanna Rice asked the court to sentence Delapinia to the maximum sentence:

I can't even explain—begin to explain how this has affected my life. I've lived on my own since I was 16 years old. I am the most independent person. I take care of my family and friends. That morning that sense of freedom and independence was taken from me. After that I couldn't be by myself. I couldn't sleep unless my little brother was sitting in the room with me. I had to move not once but twice. To this day, years later, I'm still on medication for anxiety. I've been in and out of the hospital with panic attacks, anxiety attacks. There are times where I'm afraid to leave work by myself. They are times where I am afraid to drive by myself. I can't be left home alone by myself because of a fear that somebody's going to come after me.

You know, everybody has issues. Everybody has problems and a past, but it's not an excuse. Drugs was not an excuse. What he made me do—it's not even about him robbing me and the money, because I'm a hard worker. I've worked my whole life and I'll make more. It's not about that. What he made me do, to perform sexual intercourse on him, what gave him that right? He had absolutely no right to make me do that. He had no right to put a gun to my head. What did I ever do to him? You know, I've never done anything wrong in my life. For somebody to just pick a random person like that and to destroy their life, no.

> There's no reason why he should be able to walk free. There's no reason why he should be able to go home to a family. There is no reason why he should be out on the streets living day to day, because I don't get to live day to day as a normal person, like I was when this happened. Every day I live in fear that somebody's going to come after me. I have never been afraid of anybody or anything in my life and now I am. Why does he get to live with his family and raise his kids when I don't get to live a normal life?
>
> So, yes, I do think that he should get the max sentence. And the fact that he wants to say that he was high or on drugs, it doesn't matter. That's a coward. That's a coward excuse. No. He deserves the max sentence.

(*Id.* at 16-17.)

Rice's mother, Christine Rice, also asked the court to impose a maximum sentence:

> First I would like to say that I pray to God every day that your child does not endure what my child did, ever. You are a parent's worst nightmare. What you did to a 22-year-old girl, the way you made her feel, how scared she is, somebody that can't sleep at night, can't be going by herself anywhere. You've taken something from her she could never get back. And I just have to say, you mentioned drugs, drugs are a cop-out answer. That's all that is is [sic] a cop-out answer. You're not a man.
>
> . . .
>
> I just ask that the Court imposes the maximum sentence for this man so that he is unable to do this to another child, to put another person through this kind of stuff that he has.

(*Id.* at 15.)

The PSR recommended the state district court sentence Delapinia to an aggregate term of life imprisonment with eligibility for parole after 30 years and 4 months.[3] The State requested the court impose a "cumulative sentence of 41 years to life." (*Id.* at 4-7.)

---

[3]The State appears to have erroneously argued to the state district court that the Department of Parole and Probation recommended an aggregate sentence of "24-and-a-third to life." (ECF No. 17-4 at 4.) The recommended sentences in the PSR were imprisonment for: (1) 10 years to life for sexual assault plus a consecutive 32 to 144 months (2 years and 8 months to 12 years) for the deadly weapon enhancement; (2) 5 to 15 years for first-degree kidnapping plus a consecutive 32 to 144 months (2 years and 8 months to 15 years) for the deadly weapon enhancement, to run consecutive to Count 1; (3) 16 to 72 months (1 year and 4 months to 6 years) for burglary, to run consecutive to the sentences for sexual assault and first-degree kidnapping; and (4) 72 to 180 months (2 years and 8 months to 15 years) for robbery plus a consecutive term of 32 to 180 months (6 to 15 years) for the deadly weapon enhancement, consecutive to all other sentences. (ECF Nos. 17-4 at 4, 31-1 at 9-10.) Thus, the aggregate recommended sentence in the PSR was 30 years and 4 months to life. (ECF No. 31-1 at 9-10.)

1  Defense counsel argued the State's recommendation was "more than what somebody

2  would get more generally for a first-degree murder charge," and asked the court to impose

3  concurrent sentences for all convictions and a sentence of 10 years to life for the sexual

4  assault plus a consecutive 12 to 30 years for the weapon enhancement. (*Id.* at 12.)

5     Before pronouncing sentence, the state district court addressed Delapinia:

6

7     THE COURT: Mr. Delapinia, I don't even know if it's—I don't even
      know if it's worth saying anything to you. What you did in this instance is
8     horrible beyond words. This was a 22-year-old girl. I can fully appreciate the
      joy that she takes or took in going out running. I have a daughter who is the
9     same age, who talks to me about going out where she's going to school and
      running in the mornings and how she's getting faster. And I have to admit
10    every time she calls me I have in the back of my head, you know, her safety,
      and the reason I have it in the back of the head is that there are people like
11    you out there.

12    I agree that drugs is a cop-out answer in this instance. It would be
      something for me to maybe take into consideration if all you did here was
13    simply rob Ms. Rice, but, as Ms. Rice said, what you made her do was not
      about money for drugs or using drugs. It was just pure evil violence.
14

15  (*Id.* at 18.) The court sentenced Delapinia (1) for sexual assault, to imprisonment for 10

16  years to life plus a consecutive term of 8 to 20 years for the deadly weapon enhancement;

17  (2) for first-degree kidnapping to imprisonment for 5 years to life plus a consecutive term

18  of 8 to 20 years for the deadly weapon enhancement; (3) for burglary to imprisonment for

19  4 to 10 years; and (4) for the robbery to imprisonment for 6 to 15 years plus a consecutive

20  term of 6 to 15 years for the deadly weapon enhancement. (ECF No. 17-5.) The first-

21  degree kidnapping sentence was consecutive to the sentence for sexual assault; the

22  burglary sentence was concurrent with the sentence for first-degree kidnapping; and the

23  sentence for robbery was consecutive to the sentence for first-degree kidnapping. (*Id.*)

24  The aggregate sentence was 43 years to life. (*Id.*)

25     Delapinia appealed his sentence claiming (1) the state district court plainly erred

26  by failing to articulate factual findings for the deadly weapon enhancements; (2) the

27  sentence was cruel and unusual; and (3) cumulative error. (ECF No. 17-6 at 5-6.) The

28  Nevada Supreme Court rejected the cruel and unusual punishment and cumulative error

8

1  claims but reversed and remanded for resentencing on the deadly weapon
2  enhancements. (ECF No. 17-8 at 3.)[4]

3      **D.    Resentencing on the Enhancements**

4      A different state district court judge presided over Delapinia's resentencing and
5  noted the Nevada Supreme Court was clear that "[t]he only thing open for remand and
6  address here today is the deadly weapon enhancement." (ECF No. 17-10 at 5.)

7      The State asked the court to impose 8 to 20 years for the consecutive deadly
8  weapon enhancement for the sexual assault sentence; 2 to 20 years for the consecutive
9  deadly weapon enhancement for the first-degree kidnapping sentence; and 6 to 15 years
10  for the consecutive deadly weapon enhancement for the robbery sentence. (*Id.* at 6.)

11      Defense counsel requested a sentence permitting Delapinia parole eligibility in
12  28.5 years. (*Id.* at 16.) As mitigation, defense counsel argued, *inter alia*, (1) Delapinia had
13  only one prior felony conviction for attempted possession of a stolen vehicle when he was
14  18 years old; (2) he received a felony instead of a gross misdemeanor for that conviction
15  because he was unsuccessful at boot camp; (3) he was placed on probation for the felony,
16  violated twice, but received an honorable discharge from probation; and (4) since the
17  felony, he had four incidents involving striking an officer, non-medical possession of less
18  than an ounce of marijuana, possession of narcotic paraphernalia, and possession of
19  burglary tools, which was reduced to disorderly conduct. (*Id.* at 10-11.) Counsel further
20  argued Delapinia admitted he committed the crimes, used a BB gun in the crimes
21  involving Rice, and credibly denied he possessed a gun during the Kohl's burglary. (*Id.* at
22  13-16.) Counsel argued Delapinia's methamphetamine addiction did not excuse his
23  crimes, but it explained them. (*Id.* at 17-18.)

24      Before pronouncing resentencing on the deadly weapon enhancements, the state
25  district court stated it read the record for the initial sentencing hearing. (*Id.* at 5-6.) The
26  court noted mitigating factors included (1) Delapinia was under the influence of

27

28         [4]The Nevada Supreme Court *sua sponte* directed assignment to a different judge
"for resentencing on the weapon enhancements." (ECF No. 17-8 at 5 n.2.)

methamphetamine and was a methamphetamine addict at the time of the crime; (2) he immediately admitted the facts and circumstances to some degree; (3) he precluded further trauma to the victim by foregoing trial; and (4) he was young at the time of his earlier offenses. (*Id.* at 5-6, 19-20.)

On the other hand, the state district court noted (1) Delapinia had a "fairly significant time frame of criminal history," and failed to take advantage of opportunities to change behavior; (2) recidivism was likely based on criminal activity in his youth; (3) there was a documented impact of the crime on the victim, including her continued victimization; and (4) the weapon, a BB gun, was used in a way that the victim succumbed to Delapinia's demands. (*Id.* at 20-21.) The court noted "the facts and circumstances of the crime are unimaginable, frankly, to any women or to anyone to have to experience this random act of violence, random act of assault." (*Id.* at 20.)

After considering these aggravating and mitigating factors, the court imposed an aggregate sentence of 33 years to life imprisonment, including: (1) 10 years to life for sexual assault plus a consecutive 4 to 10 years for the deadly weapon enhancement; (2) 5 years to life for first-degree kidnapping with a consecutive 4 to 10 years for the deadly weapon enhancement; (3) 4 to 10 years for burglary; and (4) 6 to 15 years for robbery plus a consecutive 4 to 10 years for the deadly weapon enhancement. (*Id.* at 21-22). The sentence for the first-degree kidnapping conviction is consecutive to the sentence for the sexual assault conviction; the sentence for burglary is concurrent with the sentence for first-degree kidnapping; and the sentence for robbery is consecutive to the sentence for first-degree kidnapping. (*Id.*)

Delapinia did not directly appeal the amended judgment and unsuccessfully challenged the judgment in state postconviction proceedings. (ECF No. 22-20.)

///

///

///

///

1    III.    **STANDARDS OF REVIEW**

2           A.    **Standards for Effective-Assistance-of-Counsel**

3           On petitioner's claims of ineffective assistance of counsel, he must demonstrate

4    (1) the attorney's "representation fell below an objective standard of reasonableness[;]"

5    and (2) the attorney's deficient performance prejudiced the petitioner such that "there is

6    a reasonable probability that, but for counsel's unprofessional errors, the result of the

7    proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88,

8    694 (1984), "A reasonable probability is a probability sufficient to undermine confidence

9    in the outcome." *Id.* at 694.

10          "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it

11   promises only the right to effective assistance." *Burt v. Titlow*, 571 U.S. 12, 24 (2013).

12   Counsel can "deprive a defendant of the right to effective assistance[] simply by failing to

13   render 'adequate legal assistance[.]'" *Strickland*, 466 U.S. at 686 (quoting *Cuyler v.*

14   *Sullivan*, 446 U.S. 335, 344, 345-50 (1980)). In considering an ineffective assistance of

15   counsel claim, a court "must indulge a strong presumption that counsel's conduct falls

16   within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689

17   (citation omitted). On the performance prong, the issue is not what counsel might have

18   done differently but whether counsel's decisions were reasonable from his or her

19   perspective at the time. *Id.* at 689-90. A petitioner making an ineffective assistance claim

20   "must identify the acts or omissions of counsel that are alleged not to have been the result

21   of reasonable professional judgment." *Id.* at 690. In considering such claims, a court is

22   obligated to "determine whether, in light of all the circumstances, the identified acts or

23   omissions were outside the wide range of professionally competent assistance." *Id.* Under

24   *Strickland*, strategic choices made "after thorough investigation of law and facts relevant

25   to plausible options are virtually unchallengeable." *Id.* On the other hand, "strategic

26   choices made after less than complete investigation are reasonable precisely to the

27   extent that reasonable professional judgments support the limitations on investigation."

28   *Id.* at 690-91. It is a petitioner's burden to show "counsel made errors so serious that

1   counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment."

2   *Id.* at 687. "In any case presenting an ineffectiveness claim, the performance inquiry must

3   be whether counsel's assistance was reasonable considering all the circumstances." *Id.*

4   at 688.

5     Ineffective assistance of counsel during a sentencing hearing can result

6   in *Strickland* prejudice because "any amount of [additional] jail time has Sixth

7   Amendment significance." *Lafler v. Cooper*, 566 U.S. 156, 165 (citation omitted). When

8   challenging counsel's failure to investigate and present mitigating evidence during a

9   sentencing hearing, the "principal concern . . . is not whether counsel should have

10   presented a mitigation case[, but instead] . . . whether the investigation supporting

11   counsel's decision not to introduce mitigating evidence . . . was itself reasonable." *Wiggins*

12   *v. Smith*, 539 U.S. 510, 522-23 (2003) (emphasis in original).

13     **B.**  **Standards for Evaluating Defaulted Ineffective-Assistance-of-Counsel**

14        **Claims**

15     "A federal court is precluded from reviewing a claim that has been barred by an

16   independent state procedural rule." *Ramirez v. Ryan*, 937 F.3d 1230, 1240–41 (9th Cir.

17   2019) (citing *Martinez v. Ryan*, 566 U.S. 1, 9 (2012)), *cert. granted, Shinn v. Ramirez*,

18   U.S., May 17, 2021). In situations where a petitioner has "procedurally defaulted" a

19   habeas claim, federal habeas review of the claim "is barred unless the [petitioner] can

20   demonstrate cause for the default and actual prejudice as a result of the alleged violation

21   of federal law." *Id.* at 1241 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

22     "Generally, post-conviction counsel's ineffectiveness does not qualify as cause to

23   excuse a procedural default." *Id.* (citing *Coleman*, 501 U.S. at 754-55.) However, in

24   *Martinez*, the Supreme Court created a narrow exception to the rule that the errors of

25   post-conviction counsel cannot provide cause for a procedural default. *See* 566 at 16–

26   17. According to the Supreme Court in *Martinez*, "the procedural default of a substantial

27   claim of ineffective assistance of trial counsel is excused," where "state law requires that

28   all claims be brought in the initial collateral review proceeding and in that proceeding there

was no counsel or counsel was ineffective." *Ramirez*, 937 F.3d at 1241 (citing *Martinez*, 566 U.S. at 17). Default may be excused under *Martinez* only when "the state collateral review proceeding was the 'initial' review proceeding in respect to the 'ineffective-assistance-of-trial-counsel claim'; and . . . state law requires that an 'ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding.'" *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (second and third alterations in original) (quoting *Martinez*, 566 U.S. at 14-16.) These requirements are satisfied for Nevada petitioners. *See Rodney v. Filson*, 916 F.3d 1254, 1260 (9th Cir. 2019) (citing *Corbin v. State*, 892 P.2d 580, 582 (Nev. 1995) (citation omitted)).

To establish "cause" to excuse a procedural default under *Martinez*, a petitioner must show that he had no counsel during postconviction proceedings or that postconviction counsel was ineffective under *Strickland*. *See Ramirez*, 937 F.3d at 1241 (citations omitted). In this context, *Strickland* requires a petitioner to demonstrate that (1) postconviction counsel's performance was deficient, and (2) there was a reasonable probability that, absent the deficient performance, the result of the postconviction proceedings would have been different. *Id.* The latter prong "is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective." *Id.*

"To establish 'prejudice' under *Martinez*'s second prong of the 'cause and prejudice' analysis, [a petitioner] must demonstrate that his underlying ineffective assistance of trial counsel claim is 'substantial.'" *Id.* (citation omitted). To show that his claims are "substantial," a petitioner must demonstrate that they have "some merit." *Martinez*, 566 U.S. at 14. A claim is "insubstantial" if "it does not have any merit or . . . is wholly without factual support." *Id.* at 16. The Supreme Court has referred to this standard as the equivalent of the standard for issuance of a certificate of appealability ("COA"). *See id.* Under those standards, a petitioner must make a "substantial showing of the denial of a constitutional right" and show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to

13

1    proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). This standard does not

2    require a showing that the claim will succeed, only that its proper disposition could be

3    debated among reasonable jurists. *See id.* at 337-38.

4         Although the requirements of cause and prejudice are distinct, "[t]he analysis of

5    whether both cause and prejudice are established under *Martinez* will necessarily

6    overlap, 'since each considers the strength and validity of the underlying ineffective

7    assistance claim.'" *Ramirez*, 937 F.3d at 1241. On all such issues, if reached, the Court's

8    review is *de novo*. *See, e.g., Detrich v. Ryan*, 740 F.3d 1237, 1246-48 (9th Cir. 2013) (en

9    banc); *Atwood v. Ryan*, 870 F.3d 1033, 1060 n.22 (9th Cir. 2017)

10   **IV.    DISCUSSION**

11        **A.    Grounds 2(b) and 4(b)—Failure to Present Mitigation Evidence**

12        Among his allegations in grounds 2(b) and 4(b), Delapinia asserts trial counsel

13   provided ineffective assistance by failing to investigate and present records evidencing

14   his assistance to authorities to support mitigation at sentencing and resentencing. (ECF

15   No. 25 at 14-18.)

16             **1.   Additional Background**

17        Respondents moved to dismiss as unexhausted those portions of grounds 2(b)

18   and 4(b) in which Delapinia alleged trial counsel provided ineffective assistance by failing

19   to present Delapinia's aid to authorities as mitigation evidence at sentencing and

20   resentencing. (ECF No. 26 at 5-7.) Respondents argued those portions of grounds 2(b)

21   and 4(b) are unexhausted because they rely on facts that were never presented to the

22   state courts as part of Delapinia's claims that trial counsel was ineffective in failing to

23   present mitigation evidence at sentencing and resentencing. (*Id.* at 6-7.) In response,

24   Delapinia argued those portions of the claims are exhausted because the facts

25   concerning Delapinia's assistance to authorities are related to Delapinia's state

26   postconviction claim that trial counsel was ineffective in failing to present the contents of

27   Delapinia's apology letter in which he stated he was forced to commit the crimes due to

28   threats from gang members. (ECF No. 35 at 3-5.) Alternatively, Delapinia argued those

1   portions of the claims are technically exhausted and procedurally defaulted, but Delapinia

2   can overcome the default under *Martinez*. (*Id.* at 5-10.) In reply, Respondents withdrew

3   their position on grounds 2(b) and 4(b) and agreed the newly alleged facts and grounds

4   for relief are similar enough to the core claims that Delapinia presented to the state courts

5   that the claims should be deemed exhausted. (ECF No. 39 at 3.) The Court accordingly

6   denied the motion to dismiss grounds 2(b) and 4(b). (ECF No. 40 at 3.)

7              **2.  Cause and Prejudice Analysis**

8          Under the state and federal procedural history in this case, the portions of grounds

9   2(b) and 4(b) in which Delapinia claims trial counsel was ineffective in failing to present

10  mitigation evidence of Delapinia's assistance to authorities, are technically exhausted by

11  procedural default, subject to the question whether Delapinia can overcome the default

12  under *Martinez*. As discussed, the principal issues before the Court, in context,[5] are: (1)

13  whether Delapinia's ineffective-assistance-of-trial counsel claim is substantial; (2) if so,

14  whether Delapinia's state post-conviction counsel was ineffective in failing to raise this

15  claim in the state district court; and (3) if so, whether, on the merits, Delapinia was denied

16  effective assistance of counsel.

17         In Nevada, a sentencing judge is afforded wide discretion in imposing

18  a sentence. *See   Randell v. State*, 846 P.2d 278, 280 (Nev.  1993).  "This  discretion

19  enables the sentencing judge to consider a wide, largely unlimited variety of information

20  to insure that the punishment fits not only the crime, but also the individual defendant."

21  *Martinez v. State*, 961 P.2d 143, 145 (Nev. 1998) (citations omitted).

22              **a.  Delapinia's claims are substantial.**

23         The Court finds the claims that trial counsel was ineffective for failing to present

24  evidence of Delapinia's assistance to authorities at sentencing and resentencing are

25

26         [5]It is undisputed that (1) a state post-conviction proceeding in the state district court
27  was an initial-review collateral proceeding for purposes of *Martinez*, and (2) Nevada
    procedural law sufficiently requires an inmate to present a claim of ineffective assistance
    of trial counsel for the first time in that proceeding for purposes of applying the *Martinez*
28  rule. *See Rodney v. Filson*, 916 F.3d 1254, 1259-60 (9th Cir. 2019). *See, supra*, p. 12.

1  substantial. Defense counsel was on notice, by virtue of Delapinia's interview transcript,

2  that police told Delapinia they would arrange for him to speak with gang detectives. The

3  undisputed police records demonstrate Delapinia's assistance led to arrests for unsolved

4  and gang-related armed robberies that were unrelated to Delapinia's offenses.[6] The state

5  court records show defense counsel did not present documents or any information

6  concerning Delapinia's assistance to authorities at sentencing or resentencing. The State

7  attorney and the PSR likewise provided no such information to the state district court. The

8  state district court did not impose minimum sentences for any of Delapinia's convictions

9  either at sentencing or resentencing. Given the broad discretion enjoyed by state district

10  courts in Nevada, documented assistance to authorities of the nature involved here could

11  have reasonably supported the imposition of a lower sentence than a state district court

12  might impose otherwise. As such, the claim that trial counsel was ineffective in

13  unreasonably failing to investigate and present documentation of assistance to

14  authorities, is substantial.

**b. Postconviction counsel's performance was deficient.**

16  Postconviction counsel performed deficiently because, under the circumstances,

17  it was unreasonable to forego investigation of Delapinia's conversations with gang

18  detectives as part of the state postconviction investigation into the claim that trial counsel

19  was ineffective in failing to present mitigation evidence at sentencing concerning gang

20  threats toward Delapinia. (ECF No. 22-17 at 33-37.)

21  Postconviction counsel asserted trial counsel was ineffective because counsel

22  failed to present the substance of Delapinia's apology letter to the victim in which

23  Delapinia asserted he committed the crimes in response to threats from gang members.

24  (*Id.* at 35-36.) To support the claim, postconviction counsel presented the apology letter

25  to the state district court in postconviction proceedings. (ECF No. 17-12 at 94.) In the

27  ───────────────

      [6]Because Respondents do not deny the correctness of the police arrest records
28  submitted by Delapinia in support of this claim (ECF Nos. 22-21 and 22-22) or refute their
authenticity, the Court considers those records under Rule 7 of the Rules Governing 2254
Cases. *See also Triguereos v. Adams*, 658 F.3d 984, 987 (9th Cir. 2011) (taking judicial
notice of documents that are "not subject to reasonable dispute").

letter, Delapinia asserts gang members coerced him to commit crimes, and further stated, "i [sic] swear to you and your family im [sic] bring down this gang. by [sic] all means nessary [sic]." (*Id.* at 93-94.) The transcript of Delapinia's initial interview with police concerning his own offenses reveals the interviewing officer told Delapinia he would arrange for him to speak with a gang detective concerning his assertions. In an affidavit, postconviction counsel explained that he "didn't investigate whether Mr. Delapinia had cooperated with the police on unrelated cases and didn't get copies of associated police reports." (ECF Nos. 17-3 at 52-53, 36-1 at 2.) Postconviction counsel "didn't make a strategic decision not to specifically include" information about Delapinia's cooperation with police, as part of the claim that trial counsel was ineffective in presenting mitigation evidence at sentencing. (ECF No. 36-1 at 2.)

Under the circumstances, an objectively reasonable postconviction attorney, whose aim was to investigate ineffective assistance of trial counsel, and in particular, trial counsel's failures to assert evidence of mitigation at sentencing, including Delapinia's claims that he committed his offenses in response to threats from gang members, would have investigated whether Delapinia spoke to gang detectives. Postconviction counsel was on notice that the officer who interviewed Delapinia intended to contact a gang detective to talk with Delapinia about his allegations against gang members. Delapinia's repeated statements about gang threats to him and his family in statements he gave to police, to probation, and in his apology letter, pointed to a distinct possibility that, given an opportunity, Delapinia intended to provide information to authorities to prosecute the gang members who made threats against him and his family.

On this record, postconviction counsel's failure to investigate whether Delapinia gave statements to gang detectives, and if so, investigate the substance of those statements and present them to support the existing postconviction claim that trial counsel was ineffective by failing to present mitigation evidence at sentencing, was objectively unreasonable and constitutes deficient performance under *Strickland*.

///

1

**c.  Postconviction counsel's performance was prejudicial.**

Under the circumstances, the Court also finds there is a reasonable probability Delapinia would have prevailed on his postconviction *Strickland* claim had postconviction counsel not unreasonably failed to investigate Delapinia's statements to gang detectives. Had postconviction counsel reasonably investigated, counsel would have discovered Delapinia's documented assistance to authorities. As discussed in greater detail below, had postconviction counsel presented that documentation to support the claim that trial counsel provided ineffective assistance at sentencing by failing to present mitigation evidence, there is a reasonable probability the result of the postconviction proceedings would have been different because the state district court has broad discretion at sentencing, the state district court did not impose minimum sentences for Delapinia's convictions, and documented assistance to authorities is evidence supporting mitigation at sentencing.

For the foregoing reasons, the Court finds Delapinia has demonstrated cause and prejudice to set aside the default of that portion of grounds 2(b) and 4(b) in which he claims ineffective assistance of trial counsel in failing to investigate and present police records demonstrating assistance to authorities at sentencing and resentencing.

**3.  Merits of Claim of Ineffective-Assistance-of-Trial Counsel**

Because Delapinia demonstrates cause and prejudice to excuse the procedural default, the Court considers the claim that trial counsel was ineffective in failing to investigate and present mitigation evidence of Delapinia's assistance to authorities at sentencing and resentencing, *de novo. See Pirtle v. Morgan,* 313 F.3d 1160, 1167-68 (9th Cir. 2002).

The Court finds trial counsel's performance was deficient under *Strickland*. Trial counsel failed to submit any information or argument at sentencing concerning Delapinia's assistance to authorities. However, the transcript of Delapinia's interview with police put trial counsel on notice that the interviewing officer would arrange for Delapinia to speak with gang detectives. Given that Delapinia repeatedly stated his crimes were, at

least in part, motivated by gang threats toward him and his family, the officer's statement that he would arrange for Delapinia to talk to a gang detective, together with Delapinia's apology letter in which he stated he would do whatever was necessary to "bring down" the gang that had threatened him and his family, counsel's failure to investigate Delapinia's statements to gang detectives was objectively unreasonable. A reasonably diligent trial attorney would have reviewed the transcript of Delapinia's interview with police, discovered the interviewing officer's plan to arrange an interview between Delapinia and gang detectives, and determined whether Delapinia spoke with gang detectives. Had trial counsel done so, counsel would have discovered the police records documenting Delapinia's assistance to authorities, which was provided on the same day that Delapinia admitted his own offenses. Under the circumstances, there is no conceivable reasonable strategic reason why trial counsel failed to investigate, uncover, and present Delapinia's documented assistance to authorities as mitigation at sentencing and resentencing. Thus, trial counsel's failure to investigate and present records of Delapinia's assistance to authorities for mitigation at sentencing and resentencing constituted deficient performance under *Strickland*.

The Court also finds trial counsel's unreasonable failure to investigate, uncover, and present records demonstrating Delapinia's assistance to authorities in support of mitigation at sentencing and resentencing prejudiced Delapinia under *Strickland*. Documented assistance to authorities that led to the arrests for unsolved gang-related armed robberies is qualitatively greater mitigation evidence than character references from friends and family, a confirmed drug addiction, and apologies to the victim. Documentation that Delapinia took affirmative steps to assist authorities in solving armed robberies that were unrelated to his own offenses, in the context of his repeated references to gang threats as a motivating force for some of his crimes and his statement in his apology letter that he intended to "bring down" the gang, would have presented a persuasive case for mitigation at sentencing.

1    Respondents contend Delapinia is not prejudiced because the convictions for

2    kidnapping and robbery are "inextricably linked to the act of sexual assault" and no

3    amount of mitigation can explain his forcing the victim into her home at gunpoint to

4    perform fellatio on him. (ECF No. 43 at 23.) However, under the circumstances, including

5    the broad discretion of the Nevada courts at sentencing and the relatively compelling

6    nature of documented assistance to authorities as a mitigation factor, there is a

7    reasonable probability the outcome of the sentencing and resentencing proceedings

8    would have been different had trial counsel not unreasonably failed to investigate and

9    present the state district court with the mitigation evidence.

10   **V.    CONCLUSION**

11   It is therefore ordered that Delapinia is entitled to federal habeas corpus relief on

12   the narrow grounds contained in grounds 2(b) and 4(b) that he received ineffective

13   assistance of trial counsel at sentencing and resentencing in violation of the Sixth and

14   Fourteenth Amendments due to counsel's failure to investigate and present evidence of

15   Delapinia's assistance to authorities.

16   It is further ordered that the petition for a writ of habeas corpus, as amended, is

17   conditionally granted for grounds 2(b) and 4(b) on the narrow grounds that trial counsel's

18   failure to investigate and present evidence of Delapinia's assistance to authorities at

19   sentencing and resentencing constitutes ineffective assistance in violation of the Sixth

20   and Fourteenth Amendments, and that, accordingly, the state court judgment of

21   conviction of Petitioner Ryan L. Delapinia in No. C289201-1 in the Eighth Judicial District

22   Court for the State of Nevada hereby is vacated.

23   It is further ordered that Delapinia be resentenced within 30 days of the later of the

24   conclusion of any proceedings seeking appellate or certiorari review of the Court's

25   judgment, if affirmed, or the expiration of the delays for seeking such appeal or review,

26   unless the state files a written election in this matter within the 30-day period to

27   resentence Delapinia and thereafter commences resentencing within 120 days following

28   the election to resentence Delapinia, subject to reasonable request for modification of the

time periods in the judgment by either party pursuant to Rules 59 and 60 of the Federal Rules of Civil Procedure. All remaining claims are denied without prejudice as moot following upon the conditional grant of the writ as set forth above.[7]

The Clerk of Court is directed to enter final judgment accordingly, conditionally granting the petition for a writ of habeas corpus as provided above and close this case. It is the Court's intention that the judgment entered pursuant to this order will be a final and appealable judgment. Final judgment is entered subject to a possible later motion to reopen the matter to enter an unconditional writ if then warranted, as a matter of enforcement of the judgment.

---

[7]In addition to the claims upon which the Court conditionally grants relief, Delapinia alleges in ground 1 that the initial sentencing judge was biased; ground 2(a) that trial counsel was ineffective in failing to request recusal of the initial sentencing judge; ground 2(b) that trial counsel was ineffective in failing to present as mitigation the apology letter referencing gang threats, evidence supporting a bona fide drug addiction; and evidence of Delapinia's violent and impoverished childhood and enrollment in special education classes in grammar and middle school; ground 3 that appellate counsel was ineffective in failing to request full resentencing; count 4(a) trial counsel was ineffective at resentencing in failing to request full resentencing; ground 4(b) trial counsel was ineffective in failing to present as mitigation the apology letter referencing gang threats, evidence of a bona fide drug addiction; and evidence of Delapinia's violent and impoverished childhood and enrollment in special education classes in school; ground 4(c) that trial counsel failed to consult with Delapinia concerning a direct appeal from the judgment after resentencing and ground 5; that Delapinia's sentence constitutes cruel and unusual punishment. (ECF No. 25 at 11-23.)

Because Delapinia is entitled to resentencing based on a narrow portion of grounds 2(a) and 4(b), a determination on the remaining claims is unnecessary. *See Blazak v. Ricketts*, 971 F.2d 1408, 1413 (9th Cir. 1992) ("[W]hen habeas is granted on a conviction . . . , requiring the district court to resolve at one time all the issues raised in the petition could actually delay the proceedings unnecessarily and waste the district court's scare judicial resources."). Even if Delapinia prevailed on one or more of his remaining claims, he could obtain no greater relief than that to which he already is entitled on the portions of ground 2(b) and 4(b) upon which the Court grants relief in vacating the judgment. *See id.* at 1412-13 (determining that "[a]lthough the district court did not address the sentencing issues, these claims became moot and unnecessary to reach by virtue of the order vacating the conviction and requiring a new trial"); *Rice v. Wood*, 44 F.3d 1396, 1402 n.10 (9th Cir. 1995), *vacated in part on other grounds*, 77 F.3d 1138 (9th Cir. 1996) (en banc), *cert. denied*, 519 U.S. 873 (1996) ("[O]ur affirmance of the district court's granting of the writ on one sentencing issue effectively renders unnecessary any further consideration by the district court of the remaining penalty phase issues."). The Court accordingly denies Delapinia's remaining claims without prejudice as moot and denies Delapinia a certificate of appealability relative to those claims.

1        It is further ordered that a certificate of appealability is denied as reasonable jurists

2    would not find it debatable whether the Court is correct in its procedural rulings denying

3    Respondent's motions to dismiss for the reasons stated in ECF No. 40.

4        The Clerk of Court is directed to seal ECF Nos. 22-21 and 22-22.

5        The Clerk of Court is directed to substitute Calvin Johnson as Respondent for

6    Respondent Brian E. Williams, Sr.

7        The Clerk of Court is directed to provide a copy of this order and the judgment to

8    the Clerk of the Eighth Judicial District Court, in connection with that court's case No.

9    C289201-1.

10       DATED this 22nd Day of March 2022.

11

12                           MIRANDA M. DU
                        CHIEF UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28